IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

TRACY HENDRICKS                                              PLAINTIFF

VS.                          3:08CV00134 WRW

PEDIATRIC SPECIALTY CARE, INC.;
LINDA SHEMPERT, Individually and
as an Employee of Pediatric Specialty Care, Inc.;
And ROBIN BEVILL, Individually and
as an Employee of Pediatric Specialty Care, Inc.            DEFENDANTS

<u>ORDER</u>

    Pending is Defendants' Motion for Summary Judgment (Doc. No. 50).  Plaintiff has

responded,[1] and Defendants have replied.[2]  For the reasons set out below, Defendants' Motion

for Summary Judgment is GRANTED.

    Also pending is Defendants' Motion to Continue (Doc. No. 49), which is DENIED as

moot.

I.      **BACKGROUND**

    Separate Defendant Pediatric Specialty Care ("PSC") is a day treatment center for

children experiencing problems with substance abuse or emotional or behavioral problems.[3]

Separate Defendant Linda Shempert ("Shempert") is PSC's Clinic Director.[4] Separate Defendant

---

[1]Doc. No. 56.

[2]Doc. No. 58.

[3]Doc. No. 52.

[4]*Id.*

Robin Bevill ("Bevill") is PSC's Assistant Clinic Director.[5] Plaintiff, Tracy Hendricks, was hired by PSC on March 1, 2007, as Admissions Coordinator.[6] Shempert was Hendricks's supervisor.[7]

About five months after Hendricks started working for PSC, in or around August, 2007, she asked for a raise.[8] Hendricks claims Shempert said there was no money in the budget for raises.[9] Hendricks alleges that around the same time her request was denied, Shempert submitted raise requests for two white employees.[10]

On or around September 20, 2007, Shempert was called by the nurse of a physician that referred over half the PSC's patients.[11] The referring physician's nurse reportedly complained about Hendricks's conduct toward her clinic staff.[12] Shempert then visited the referring physician to discuss the situation, and the physician allegedly expressed numerous concerns about Hendricks's behavior.[13]

On November 16, 2007, Hendricks had her own complaints -- she complained to Shempert that a co-worker had a bad attitude and was inappropriately questioning Hendricks about her actions relating to a patient.[14] On that same day, Hendricks was issued a written

---

[5]*Id.*

[6]*Id.*

[7] *Id.*

[8]Doc. No. 57.

[9]*Id.*

[10]*Id.*

[11]Doc. No. 52.

[12]*Id.*

[13]*Id.*

[14]*Id.*

warning about her attendance.[15] The warning was based on Hendricks' seventh attendance policy violation, which occurred three days earlier, on November 13, 2007.[16]

On December 4, 2007, Hendricks filed a grievance with PSC citing various complaints, including being excluded from meetings, and that African Americans were being treated unfairly at PSC.[17] The next day, Hendricks was given a final written warning about her allegedly continuing behavior toward the referring physician (whom had previously complained of Hendricks's behavior), his staff, and his patients.[18]

On or about January 28, 2008, Hendricks filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").[19] The EEOC issued a Dismissal and Notice of Rights on July 7, 2008.[20] Hendricks filed this action on August 25, 2007,[21] asserting claims under Title VII of the 1964 Civil Rights Act.[22] Hendricks was then terminated by PSC, effective August 29, 2008, for insubordination and failure to meet her performance expectations.[23]

---

[15]*Id.*

[16]Doc. No. 52.

[17]*Id.*

[18]Doc. Nos. 52, 52-18..

[19]*Id.*

[20]Doc. No. 2.

[21]*Id.*

[22]42 U.S.C. § 2000(e).

[23]Doc. No. 52.

## II.    STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[24]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[25]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[26]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[27]  I must view the facts in the light most favorable to the party opposing the motion.[28]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[24]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[25]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[26]*Inland Oil & Transp. Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[27]*Id.* at 728.

[28]*Id.* at 727-28.

showing that there is a genuine dispute on that issue. If the respondent fails to carry
that burden, summary judgment should be granted.[29]

Only disputes over facts that may affect the outcome of the suit under governing law will
properly preclude the entry of summary judgment.[30]

## III.    DISCUSSION

### A.    Individual Liability

Hendricks has sued Separate Defendants Shempert and Bevill individually under
Title VII.[31]  Individual employees, including supervisors, are not personally liable under Title
VII.[32] Accordingly, Hendricks's Title VII claims against Shempert and Bevill in their individual
capacities are DISMISSED.

### B.    Failure to Exhaust Administrative Remedies

A plaintiff must exhaust her administrative remedies before filing a Title VII action.[33] A
Title VII plaintiff generally does not exhaust her administrative remedies unless she complains
of the alleged discriminatory behavior to the EEOC before filing a lawsuit.[34] Although an EEOC
complaint "need not specifically articulate the precise claim or set forth all the evidence an
employee may choose to later present in court," it must still "be sufficient to give the employer

---

[29]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[30]*Anderson*, 477 U.S. at 248.

[31]Doc. No. 2.

[32]*Roark v. City of Hazen*, 189 F.3d 758 (8th Cir. 1999).

[33] 42 U.S.C. § 2000(e-5).

[34]*Stuart v. General Motors Corp.*, 217 F.3d 621, 630-31 (8th Cir. 2000).

notice of the subject matter of the charge and identify generally the basis for a claim."[35] This is especially true where the basis of a claim is easily and separately identifiable.[36]

     To the extent Hendricks is alleging discrimination related to her termination, her claim fails because her termination is a specific and easily identifiable incident of discrimination,[37] and she has not exhausted her administrative remedies as to that claim. Hendricks was terminated on August 29, 2008.[38] The EEOC had already issued the Notice of Rights two months earlier, on July 7, 2008.[39] So, Hendricks's EEOC complaint and the Notice of Rights do not, and could not, reference any acts occurring after July 7, 2008 -- including her termination.[40] To the extent Hendricks now alleges discrimination related to her termination, her EEOC charge could not put PSC on notice, and she has failed to exhaust her administrative remedies as to that claim.[41] Accordingly, summary judgment is GRANTED on Hendricks's claims of discrimination related to her termination.[42]

---

[35]*Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1123 (8th Cir. 2006).

[36]See *Humphries v. Pulaski County Special School Dist.*, 580 F.3d 688, 692 (8th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, (2002) ("[D]iscrete acts such as failure to hire are 'easy to identify,'" and "[e]ach incident of [alleged] discrimination . . . constitutes a separate actionable 'unlawful employment practice.'")).

[37]See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) ("Discrete acts such as termination . . . are easy to identify.").

[38]Doc. No. 52.

[39]Doc. No. 2.

[40]Doc. No. 52.

[41]See *Humphries*, 580 F.3d 688 (employee failed to exhaust her administrative remedies with respect to her race discrimination claims, based on employers' failure to promote her, where employee failed to file EEOC complaint in that regard, and complaint was otherwise insufficient to give employer notice of charge and identify generally the basis for claim.)

[42]See *Humphries*, 580 F.3d at 692.

### C.     Plaintiff's Remaining Claims

Hendricks alleges the following acts of discrimination by Defendants:[43] denial of

training; failure to be selected to present training to employees; denial of a raise; exclusion from

certain administrative duties and meetings.[44] Hendricks also makes a hostile work environment

claim.[45] Finally, Hendricks alleges that the warnings she received regarding attendance and the

referring physician's complaints were issued in retaliation for her own complaints to PSC about

her adverse employment conditions.[46]

### D.     Discrimination & Retaliation Burden of Proof

Claims of employment discrimination and retaliation made under Title VII are analyzed

under the *McDonnell Douglas* burden-shifting analysis.[47] According to that analysis, Hendricks

bears the initial burden of proving a *prima facie* case of discrimination or retaliation, PSC then

has the burden to articulate a legitimate, nondiscriminatory reason for the adverse employment

---

[43]In addition to the allegations listed here, Hendricks's Complaint also alleges that PSC discriminated against her by making defamatory statements about her. Doc. No. 2. However, Hendricks does not develop this claim elsewhere in the record, and it is unclear whether she continues to maintain this claim. Only in Hendricks's deposition does she describe the allegedly defamatory conduct of PSC. However, the statements she identifies as defamatory are contained in a letter from PSC's Human Resources Manager to Hendricks. Doc. No. 52-3. An action for defamation requires publication, and Hendricks presents no evidence that the letter about her disrespectful behavior was given to anyone but her. See *Navarro-Monzo v. Hughes*, 297 Ark. 444, 453 (1989) ("It is essential to tort liability for slander that the defamation be communicated to one other than the person slandered.") Accordingly, to the extent Hendricks does still maintain a claim of defamation, summary judgment for Defendants' is GRANTED.

[44]Doc. No. 52-26.

[45]Doc. No. 52-26.

[46]Doc. No. 2.

[47]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);  *McCullough v. Univ. of Ark. for Med. Sci.*, 559 F.3d 855 (8th Cir. 2009).

action, and Hendricks must then show that PSC's articulated reason is untrue and a pretext for discrimination and retaliation.[48]

### 1. Plaintiff's *Prima Facie* Case of Discrimination

To establish a *prima facie* case of discrimination for the purposes of summary judgment, Hendricks must establish that there is an issue of material fact that: (1) she is a member of a protected class;[49] (2) she was qualified for the position sought; (3) she suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently.[50]

### a. Race discrimination claims fail with respect to denial of training and exclusion from activities/duties

The Eighth Circuit has consistently held that an "adverse employment action must be one that produces a material employment disadvantage."[51] "Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge."[52] On the other hand, "[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the prong."[53] In other words, "the employment-discrimination laws have not vested in the federal courts the authority to sit as

---

[48]See *Id.*

[49]Hendricks is an African American, a protected class.

[50]*Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005).

[51]*Higgins v. Gonzales*, 481 F.3d 578, 585 (8th Cir. 2007) (quoting *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir. 1999) (internal quotation marks omitted)).

[52]*Id*

[53]*Id*. (citing *Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005)).

super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."[54]

In her EEOC charge, Hendricks alleges that she was "not allowed to present employee training, not allowed to cross-train in other positions, not allowed [Mental Health Paraprofessional ("MHPP")] training, [and] consistently excluded from administrative duties."[55]

Hendricks believes she should have been allowed to present employee training because other employees presented training.[56] However, she admits training was not part of her job duties as Admissions Coordinator.[57] And, Hendricks presents no evidence that the denial of presenting employee training produced a material employment disadvantage.[58] Accordingly, she has not presented evidence demonstrating a genuine issue of material fact that she suffered an adverse employment action relating to denial of presenting training.

And, even if PSC's actions in this respect were adverse employment actions, PSC has articulated a legitimate, nondiscriminatory reason for the them,[59] and Hendricks has not

---

[54]*Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771 (8th Cir. 1995); see also *Walker v. AT&T Technologies*, 995 F.2d 846 (8th Cir. 1993) ("[A]n employer may exercise business judgment in making personnel decisions.").

[55]Doc. No. 52-26.

[56]Doc. No. 52-3.

[57]*Id.*

[58]See *Higgins*, 481 F.3d at 585 ("Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the prong.").

[59]PSC points out that, unlike Hendricks, the employees Hendricks listed as having presented training were either supervisors or health care professionals. (Doc. No. 51.) See *Floyd v. Mo. Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999) ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence.").

presented any evidence establishing a genuine issue of material fact that this articulated reason is untrue and a pretext for discrimination and retaliation.[60]

Hendricks's claims about cross-training and exclusion from administrative duties fail for similar reasons. As for cross-training, Hendricks states during her deposition that she wanted to be able to perform duties associated with other positions.[61] As for exclusion from administrative duties, Hendricks specifies that she was excluded from certain administrative meetings.[62] Here, again, Hendricks has presented no evidence that the denial of the opportunity to perform duties of other positions, or the exclusion from PSC's administrative meetings, produced a material employment disadvantage.[63] Accordingly, Hendricks has not presented evidence demonstrating a genuine issue of material fact that she suffered an adverse employment action relating to cross-training and exclusion from administrative duties.

With respect to Hendricks's claim that she was not allowed MHPP training,[64] "[a]n employer's denial of an employee's request for more training is not, without more, an adverse employment action."[65] Here again, Hendricks asserts no material disadvantage resulting from her denial of MHPP training. Hendricks fails to allege ever being denied a promotion or a raise

---

[60]See *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005) ("[A]n employee's attempt to prove pretext requires more substantial evidence than it takes to make a *prima facie* case because unlike evidence establishing a *prima facie* case, evidence of pretext and retaliation is viewed in light of the employers' justification.").

[61]Doc. No. 52-3.

[62]*Id.*

[63]See *Higgins,* 481 F.3d at 585 ("Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the prong.").

[64]Doc. No. 52-26.

[65] *Higgins*, 481 F.3d at 585 (quoting *Box v. Principi*, 442 F.3d 692 (8th Cir. 2006)).

because of a lack of training, and admits to having ultimately completed MHPP training.[66]

Accordingly, Hendricks has not presented evidence demonstrating a genuine issue of material

fact that she suffered an adverse employment action relating to denial of MHPP training.

Summary judgment is GRANTED as to Hendricks's claims of denial of training and

exclusion from activities/duties.

### b.      Race discrimination with respect to the denial of a raise

Hendricks alleges she was denied a raise because of race discrimination.[67] As part of her

initial burden, Hendricks must present evidence establishing a genuine issue of material fact that

PSC's actions were motivated by her race.[68] For claims of disparate pay, an employee must

prove that she was treated less favorably than other similarly situated employees outside the

protected class.[69] To do so, Hendricks must show that the similarly situated employees are, in

fact, "similarly situated in all relevant respects."[70] Hendricks has not met her initial burden, and

summary judgment is proper as to her discrimination by denial of a raise claims.[71]

---

[66]Doc. No. 52-3.

[67]Doc. Nos. 2 and 52-26.

[68]See *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005).

[69] *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859 (8th Cir. 2008) (holding that the district court did not err in granting employer's motion for summary judgment where plaintiff did not show that the employer treated similarly situated employees differently than plaintiff with respect to pay).

[70] See *Smith v. Allen Health Sys., Inc*., 302 F.3d 827 (8th Cir. 2002).  Hendricks must also prove a similarity not only between herself and the alleged similarly situated employees, but also between the circumstances surrounding herself and those surrounding the alleged similarly situated employees. See *Hervey v. County of Koochiching*, 527 F.3d 711 (8th Cir. 2008).

[71]See *Fields*, 520 F.3d 859.

Hendricks asked Shempert for a raise around August 2007.[72] Shempert allegedly responded to Hendricks's request by stating that there was no room in the budget to give her a raise.[73] In support of her discrimination claim, Hendricks says she saw raise requests Shempert submitted to the corporate office for two white employees -- Mandrea Godsey and Bridget Holleman -- around the same time.[74] Hendricks alleges that both she and Godsey were offered positions by another employer at a higher pay rate, both asked Shempert for raises, but only Godsey was given a raise.[75] Hendricks, however, presents zero evidence that she and Godsey, or she and Holleman, are otherwise similarly situated in relevant respects, such as their positions, tenure, etc.  So, Hendricks has not presented evidence demonstrating a genuine issue of material fact that she suffered discrimination with respect to the denial of a raise.

Also, PSC articulated a legitimate, nondiscriminatory reason for not giving Hendricks a raise,[76] and Hendricks has provided no evidence raising a material issue of fact that PSC's articulated reason is untrue and a pretext for discrimination.[77]

---

[72]Doc. No. 56-1.

[73]*Id.*

[74]*Id.*

[75]*Id.* Notably, Hendricks offers no allegations at all about the other employee, Holleman, who was also alleged to have received a raise.

[76]PSC provided evidence that Hendricks was not eligible for a raise under PSC policy, that Godsey and Holleman were both hired long before Hendricks, in 2005, and were only given raises after becoming eligible for a raise under PSC policy (Doc. No. 51). See *Floyd v. Mo. Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999) ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence.").

[77]See *Logan,* 416 F.3d at 880.

Summary judgment is GRANTED as to Hendricks's claims regarding the denial of a raise.

### 2.    Plaintiff's *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation, a plaintiff must present evidence that: (1) she participated in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal connection between the adverse employment action and the protected activity.[78] Hendricks's claim for retaliation fails because she offers no evidence establishing a genuine issue of material fact that there is a causal connection between the disciplinary actions and her complaints to PSC.

Hendricks complains of two incidents of retaliation. Hendricks first argues that on or around November 15, 2007, she complained to Shempert about being excluded from certain activities,[79] then complained to Shempert again the following day about a co-worker's hostile behavior toward her.[80] The next day, Hendricks received a written warning regarding attendance.[81]

On December 4, 2007, Hendricks filed a grievance with PSC alleging various complaints, including being excluded from meetings, and that African Americans were being treated unfairly

---

[78]See *EEOC v. Kohler Co.*, 335 F.3d 766, 774 (8th Cir. 2003).

[79]Doc. No. 52-26.

[80]*Id*

[81]Doc. No. 52.

at PSC.[82] The next day, Hendricks received a final written warning regarding complaints from the referring physician's office.[83]

Hendricks alleges both these warnings were issued in retaliation for her complaints to PSC.[84] The only causal connection Hendricks offers between her complaints and the disciplinary actions PSC took against her is the proximity in time between the events.[85] Proximity in time between the protected activity and the adverse action, however, is generally not enough to prove a causal connection.[86] The causal connection element requires Hendricks to "show that the protected conduct was a 'determinative - not merely motivating – factor' in the employer's adverse employment decision."[87] To the extent it could be argued that the proximity in time between Hendricks's complaints and PSC's disciplinary actions are causally related, no evidence has been presented to raise a material issue of fact that Hendricks's protected conduct was the determinative (rather than a merely motivating) factor in PSC's disciplinary actions.

Even assuming that Hendricks's evidence of the proximity in time between her complaints and the disciplinary actions are enough to establish her *prima facie* case, PSC

---

[82]*Id.*

[83]*Id.*

[84]Doc. No. 52-3.

[85]*Id.*

[86]*Xuelin Zhuang v. Datacard Corp.*, 414 F.3d 849 (8th Cir. 2005) ("A causal connection implies not just a relationship between two events, but a certain type of relationship in which one event is generated by the other . . . the fact of two events occurring close in time does not eliminate the possibility of a mere coincidence.").

[87]*Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144 (8th Cir. 2008) (quoting *Carrington v. City of Des Moines*, 481 F.3d 1046 (8th Cir. 2007)).

articulates a legitimate, nondiscriminatory reason for the disciplinary actions.[88] As for discipline related to Hendricks's attendance, PSC provided evidence that Hendricks was tardy for the fourteenth time in six months, which triggers a written warning under PSC policy.[89] As for discipline related to the referring physician's complaints about Hendricks's behavior, PSC provided evidence that this physician provided over half of PSC's business, and that the physician threatened to cease doing business with PSC if Hendricks's behavior continued.[90] Hendricks provides no allegations or evidence raising a material issue of fact that PSC's articulated reasons are untrue and a pretext for discrimination.[91] Accordingly, summary judgment is GRANTED as to Hendricks's claims regarding retaliation.

### 3.    Plaintiff's *Prima Facie* Case of Hostile Work Environment

To establish a *prima facie* case of hostile work environment harassment by non-supervisory co-workers, a plaintiff must establish all of the following:

> (1) membership in a protected group; (2) the occurrence of unwelcome harassment;
> (3) a causal nexus between the harassment and her membership in the protected
> group; (4) the harassment affected a term, condition, or privilege of employment; and
> (5) the employer knew or should have known of the harassment and failed to take
> prompt remedial action.[92]

I do not examine the first, second, and fifth prongs, because Hendricks's claim clearly fails on the third and fourth prongs -- Hendricks does not present evidence that the harassment affected a

---

[88]See *Floyd v. Mo. Dept. of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999) ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence.").

[89]Doc. No. 51.

[90]*Id*

[91]See *Logan,* 416 F.3d at 880.

[92]*Jacob-Mua v. Veneman*, 289 F.3d 517, 520 (8th Cir. 2002).

term of her employment, or evidence that a causal nexus exists between the harassment and her

race.

　　To overcome summary judgment for her hostile work environment claim, Hendricks

must establish that the alleged harassment was "sufficiently severe or pervasive as to affect a

term,

condition, or privilege of employment by creating an objectively hostile or abusive

environment."[93] Such an environment occurs when the harasser's conduct could be considered

by a reasonable and objective person to be "more than merely offensive, immature, or

unprofessional[.]"[94] "More than a few isolated incidents are required . . . and the alleged

harassment must be so intimidating, offensive or hostile that it poisoned the work

environment."[95]

　　Hendricks claims that she was subjected to a hostile work environment because of

the behavior of her co-worker, Judy Kaulfurst.[96] During her deposition, Hendricks specified

the offending actions of Kaulfurst.

> Q [The EEOC Charge a]lso states that you were subjected to hostile behavior by
> coworker, white female?
> A. Yes.
> Q. Who was the coworker who was hostile?
> A. Judy.
> Q. And how was she hostile?
> A. Oh, she -- like I'm saying, she verbally attacked me, and then when I brought it to
> Linda's attention, it was turned around, you know, that -- she didn't say that, you
> know, and I said, Yes she did. In fact, the incident where, you know, she became irate

---

[93]*Meriwether v. Caraustar Packaging Company*, 326 F.3d 990, 993 (8th Cir. 2003).

[94]*Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1027 (8th Cir. 2004).

[95]*LeGrand v. Area Resources for Community and Human Services*, 394 F.3d 1098, 1100
 (8th Cir. 2005) (internal quotations omitted).

[96]Doc. No. 52-3.

and I told Linda -- I said, Linda, she verbally threatened me. She said, You better watch your back. So when I told Linda that, she said Judy didn't say that. I said she did say that, but that was -- you know, that's how it would usually go. It didn't happen like that.[97]

The incident that Hendricks describes as Judy becoming "irate" is detailed below.

I remember complaining about Ms. Judy, and that incident stemmed from -- it was right after that incident on the 14th, I spoke to Linda, 14th, 15th, and then the 16th, you know, Judy came, and what it was -- what happened was it was a child, you know, in question that needed to be picked up. And I was talking to the parent, the child's parent on the phone trying to arrange when the child could be seen by the doctor and so on. What -- Judy had someone on the phone, and she wanted an answer when I was talking to the parent, and I told her, explained to her I couldn't answer it. I had to talk to the parent to see when I could schedule a meeting. So she got irate and started screaming and hollering at me, and I explained to her when I get through with the phone conversation, then I'll talk to her. So, you know, she said da, da, da, blew up, you know. So I told the parent that I would call them back.[98]

These are the only incidents on the record detailing the actions Hendricks alleges as harassment. Hendricks fails to present any evidence raising a material issue of fact that these "few isolated incidents" of "merely offensive, immature, or unprofessional,"[99] harassment affected a term, condition, or privilege of her employment, or that "the alleged harassment . . . [was] so intimidating, offensive or hostile that it poisoned the work environment."[100] This is enough to deny her claim.

But, Hendricks also fails to present any allegation or evidence raising a material issue of fact that there was a causal nexus between her co-workers' harassment and Hendricks's race.[101] None of the alleged incidents explicitly invoke race or imply a race-related motivation. Instead,

---

[97]*Id.*

[98]*Id.*

[99]*Meriwether*, 326 F.3d at 993.

[100]*LeGrand,* 394 F.3d at 1100.

[101]*Jacob-Mua v. Veneman*, 289 F.3d 517, 520 (8th Cir. 2002).

these incidents appear to be disagreements between co-workers about work-related disputes.

Accordingly, the behavior described by Hendricks does not constitute a hostile work

environment, and summary judgment is GRANTED as to Hendricks's claims in that respect.

## CONCLUSION

For the reasons set out above, Defendants' Motion for Summary Judgment (Doc. No. 50)

is GRANTED, and Defendants' Motion to Continue (Doc. No. 49) is DENIED as moot.

IT IS SO ORDERED this 4th day of January, 2010.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE